# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **ANNETTE FONTENOT** | : | **DOCKET NO. 2:08-cv-217** |
| **VS.** | : | **JUDGE MINALDI** |
| **MICHAEL J. ASTRUE,** **COMMISSIONER OF SOCIAL** **SECURITY** | : | **MAGISTRATE JUDGE KAY** |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of supplemental security income benefits. This matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## BACKGROUND

Plaintiff to this action, Annette Fontenot, initially filed an application for disability insurance benefits on September 17, 2004. Transcript at 12. She claims disability beginning March 28, 2003 due to pain in her neck, left shoulder, elbow, wrist, lower back, knee, and legs; and the removal of her right kidney. *Id*. at 113. Plaintiff's application for benefits was denied, and plaintiff requested a hearing before an administrative law judge (ALJ). *Id.* at 12, 62. On August 10, 2006, a hearing was held. *Id.* at 677-710. At the hearing plaintiff, who was represented by an attorney, testified. *Id.* A vocational expert also testified. *Id.* The ALJ issued

1

a written decision on October 27, 2006 finding plaintiff not disabled within the meaning of the Social Security Act. *Id.* at 12-18.

Plaintiff requested that the Appeals Council review the ALJ's decision and attached a brief in support, but the Appeals Council found no basis for changing the ALJ's decision and on January 4, 2008 denied its review. *Id.* at 4-7.

Pursuant to 42 U.S.C. § 405(g), plaintiff requested that this court review the decision of the Commissioner to determine if it complies with applicable law and is supported by substantial evidence. This court finds that it is.

## STANDARD OF REVIEW

"In Social Security disability cases, 42 U.S.C. § 405(g) governs the standard of review." *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Frith v. Celebrezze*, 333 F.2d 557, 560 (5th Cir. 1964)). The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Greenspan*, 38 F.3d at 236). "It is 'more than a mere scintilla and less than a preponderance.'" *Id.* (quoting *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)). It is "such relevant evidence as a reasonable mind might accept to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). In applying the substantial evidence

standard, the reviewing court critically inspects the record to determine whether such evidence is present, "but may not reweigh the evidence or substitute its judgment for the Commissioner's." *Perez*, 415 F.3d at 461 (citing *Greenspan*, 38 F.3d at 236; *Masterson*, 309 F.3d at 272). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1421, 28 L. Ed. 2d 842 (1971). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez*, 415 F.3d at 461 (citing *Masterson*, 309 F.3d at 272).

## DISCUSSION

The burden of proving that he or she suffers from a disability[1] rests with the claimant. *Perez*, 415 F.3d at 461. The claimant must show that he or she is unable to engage in a work activity "involving significant physical or mental abilities for pay or profit." *Id.* (citing 20 C.F.R. § 404.1572(a)-(b)). The ALJ conducts a five-step sequential analysis to evaluate claims of disability, asking:

> (1) whether the claimant is currently engaged in substantial gainful activity (whether the claimant is working); (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work (whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work.

*Id.* (citing 20 C.F.R. § 404.1520). If the claimant meets the burden of proof on the first four steps, the burden shifts to the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy. *Id.* "'Once the Commissioner makes

---

[1] A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

this showing, the burden shifts back to the claimant to rebut this finding.'" *Id.* (quoting *Newton v. Apfel*, 209 F.3d 448, 453 (2000)).

The analysis ends if the Commissioner can determine whether the claimant is disabled at any step. *Id.* (citing 20 C.F.R. § 404.1520(a)). On the other hand, if the Commissioner cannot make that determination, he proceeds to the next step. *Id.* Before proceeding from step three to step four, the Commissioner assesses the claimant's residual functional capacity (RFC). *Id.* "The claimant's RFC assessment is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Id.* at 461-62 (citing 20 C.F.R. § 404.1545(a)(1)). The claimant's RFC is considered twice in the sequential analysis—at the fourth step it is used to determine if the claimant can still do his or her past relevant work, and at the fifth step the RFC is used to determine whether the claimant can adjust to any other type of work. *Id.* at 462 (citing 20 C.F.R. § 404.1520(e)).

Once the claimant has made an appeal, the Appeals Council may decide to grant review, deny review, or dismiss the appeal. "[W]hen the Appeals Council denies a request for review, the ALJ's decision becomes the Commissioner's final decision." *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005).

Here, the ALJ found that plaintiff was not disabled within the meaning of the Social Security Act. Specifically, the ALJ found that 1) plaintiff had not engaged in substantial gainful activity at any time relevant to the decision; 2) plaintiff's severe impairments included osteoarthrosis[2] and disorders of the spine; and 3) plaintiff's impairments do not meet or exceed any listed impairment. Transcript at 14-16. The ALJ concluded that plaintiff's RFC allows her to perform sedentary work. *Id.* at 16. Plaintiff's RFC allows her to stand/walk for a total of two

---

[2] Osteoarthrosis is another name for osteoarthritis and is defined as "a noninflammatory degenerative joint disease. . . ." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1286 (29th ed. 2000).

hours in an eight hour day and to occasionally climb stairs, but restricts her from climbing ropes, scaffolds, or ladders; from crawling; or from reaching overhead with her left arm more often than occasionally. *Id.*

Based on the assigned RFC, the ALJ determined, with the aid of a vocational expert, that plaintiff could perform her past relevant work as an admitting clerk, which is defined as sedentary semi-skilled work. *Id.* at 17-18.

In determining whether substantial evidence of disability exists, this court weighs four factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Perez*, 415 F.3d at 461. Before this court, plaintiff argues:

> 1. The ALJ failed to properly consider all of her exertional limitations in determining her RFC.
>
> 2. The ALJ failed to consider all of her impairments singularly and in combination.

## I.

Plaintiff asserts first that substantial evidence does not support the ALJ's decision because the ALJ failed to comply with 20 C.F.R. §§ 404.1545 and 416.945, and Social Security Ruling 96-8p. Doc. 16, at 6. Plaintiff argues that the ALJ must perform a full function-by-function assessment of a claimant's physical, mental, and sensory abilities, according to Social Security Administration rulings and regulations to accurately determine a claimant's RFC, including a claimant's exertional and non-exertional limitations. *Id.*

Plaintiff argues that the ALJ erred by failing to perform a function-by-function analysis of the strength demands set out in the above cited ruling and regulations. *Id.* Specifically,

plaintiff argues that the ALJ's opinion omits discussion of the strength demand of sitting and that this omission has prejudiced her.[3] *Id.* at 6-7.

Plaintiff notes that, according to Social Security Ruling 96-9p, the sedentary occupational base is eroded if an individual is unable to sit for a total of six hours out of an eight hour day. *Id.* at 6. Plaintiff argues that the medical record demonstrates medical conditions likely to cause sitting limitations. *Id.* at 7. Plaintiff argues her conditions include pain radiating down her lower extremity, disc osteophyte complex, disc herniation, impingement on the S1 root sleeve, spinal stenosis in the lower back, and obesity. *Id.* (citing Transcript at 276, 445, 667, 672). Plaintiff argues that this medical evidence demonstrates the types of conditions that caused her to testify that she can sit for only twenty minutes before the pain causes her to have to lie down. *Id.* (citing Transcript at 701).

According to plaintiff:

> Had the ALJ addressed Plaintiff's functional capacity to sit, he might have found that she could only sit four or five hours during the work day. Such a limitation, coupled with the fact that the ALJ limited the Plaintiff to only two hours of standing, would rule out competitive employment due to the inability to work a full eight hour day. As such, the ALJ's failure to quantify the Plaintiff's sitting limitations prejudiced the Plaintiff.

*Id.* at 7.

To support her claim that the ALJ erred, plaintiff cites *Myers v. Apfel*, 238 F.3d 617 (5th Cir. 2001). In *Myers*, the appeal court relied on Social Security Ruling 96-8p to clarify the meaning and assessment of a claimant's RFC. The court noted that, according to Social Security

---

[3] Plaintiff alleges that the ALJ also failed to consider the strength demands of pushing and pulling, but fails to allege how this prejudiced her case. "Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1998); *see also Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Plaintiff has failed to demonstrate that her substantial rights have been affected by the ALJ's alleged failure to consider the strength demands of pushing and pulling.

Ruling 96-8p, the ALJ must make a "'function-by-function assessment based upon all the relevant evidence of an individual's ability to do work-related activities.'" *Meyers*, 238 F.3d at 620. With regard to both step four (determining if a claimant can perform past relevant work) and step five (determining if a claimant can perform other jobs in the national economy), Social Security Ruling 96-8p requires that the ALJ assess an individual's capacity to perform all exertional and non-exertional functions associated with a given exertional level, such as sedentary. Social Security Ruling 96-8p; *Meyers*, 238 F.3d at 620. Exertional capacity involves the ability to sit, stand, walk, lift, carry, push, and pull. *Meyers*, 238 F.3d at 620. Each exertional function must be considered separately, although they may be paired in a final RFC assessment. *Id.* The *Meyers* court noted, "'In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . .'" *Id.* (quoting Social Security Ruling 96-8p). The adjudicator must also resolve any inconsistencies in the evidence. *Id.*

The *Meyers* court also discussed Social Security Ruling 96-9p, noting that the "'impact of an RFC for less than a full range of sedentary work is especially critical for individuals who have not yet attained age 50. . . . [T]he conclusion whether such individuals are disabled will depend primarily on the nature and extent of their functional limitations or restrictions.'" *Id*. (quoting Social Security Ruling 96-9p).

In *Meyers*, the court determined that the ALJ failed to address all of the concerns associated with Social Security Rulings 96-8p and 96-9p, especially with regard to her ability to perform all of the exertional demands of sedentary work. The court explained:

> [The ALJ] found that [plaintiff] could sit, lift, and carry ten pounds; would need a sit/stand option; and would need to stretch every thirty minutes. The ALJ failed, however, to fully address

7

standing, walking, and pushing/pulling. The ALJ also failed to set out whether Myers could perform these demands on a regular and continuing basis. Perhaps most importantly, the ALJ failed to resolve the inconsistencies in the evidence. He relied on the opinion of the [medical expert], Dr. Craig, who did not examine or treat Myers, but based his conclusion that she met the requirements for sedentary work on an incomplete reading of the treating physicians' reports. However, the medical evidence as a whole indicates that Myers cannot meet the requirements. For example, Dr. Haddad diagnosed a ruptured disc, Dr. Johnston diagnosed degenerative disc disease, and Dr. Davidson put stricter restrictions on Myers's capacity.

*Id.* at 620-21.

In the instant case, the ALJ did not include any limitations to plaintiff's RFC with regard to her ability to sit. Transcript at 16. To the contrary, in his decision, the ALJ specifically noted that "a sedentary job is defined as one that involves sitting" and that plaintiff "has the residual functional capacity to perform a range of sedentary work." *Id.* It is evident that the ALJ found that plaintiff had *no* limitations on her ability to sit. This is consistent with the medical evidence. Specifically, plaintiff cites no medical evidence in which a physician opined that she has a limitation on her ability to sit. Doc. 16. Further, Dr. DeLapp, an orthopedic physician, specifically determined that "[s]itting is not impaired" during a consultative examination conducted for the purpose of determining disability. Transcript at 264.

In response to questioning by her attorney, plaintiff testified she could sit about twenty minutes and that "[e]ven during the 20 minutes that I'm sitting my back is hurting but it gets so intense that I have to lay down. It's hurting where I need to take some of the strain off the back and that strain is what I get from sitting." *Id.* at 701. Plaintiff complained that she also has pain in her "neck, the sides as well as the shoulder" associated with sitting. *Id.* Plaintiff described the pain between a six and an eight, and as "unbearable really." *Id.*

The ALJ found that the objective medical findings did not support plaintiff's alleged degree of pain and functional limitation. *Id.* at 16-17. The ALJ also noted that no evidence indicated "serious muscle weakness, muscle spasm, atrophy, weight loss, or other signs of progressive physical deterioration which might be expected when an individual experiences intense and continuous pain." *Id.* at 17. The ALJ concluded by conceding that plaintiff's problems may be expected to produce mild chronic pain and discomfort, but that "the medical records do not show repeated hospitalizations or aggressive forms of therapy (such as treatment at a pain clinic) that would be expected if she experienced severe, persistent and unremitting pain."

The record taken as a whole indicates that the ALJ considered plaintiff's allegations with regard to her pain, but found that the evidence supported a conclusion that plaintiff did not suffer from limitations on her ability to sit. "'[T]he ALJ has sole responsibility for determining a claimant's disability status.'" *Martinez*, 64 F.3d at 176 (quoting *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990)). A reasonable mind could accept from the record that plaintiff was capable of performing the sitting limitations associated with sedentary work.[4] *Moore*, 919 F.2d at 905.

## II.

Plaintiff's also asserts that the ALJ erred by failing to consider all of plaintiff's severe impairments, either alone, or in combination. Doc. 16, at 7. Specifically, plaintiff argues that she alleged impairments of obesity and a sleep disorder, but that the ALJ failed to discuss them

---

[4] The Commissioner argues that, even if the ALJ failed to specifically allege plaintiff's limitations with regard to sitting, the error was harmless. Doc. 17, at 4-5. The court agrees. Evidence considered by the ALJ does not support a finding that plaintiff suffers from limitations on her ability to sit. The only evidence is plaintiff's subjective complaints of pain, which the ALJ specifically discredited. Since the evidence does not support a finding of disability, any failure of the Commissioner to consider it would not prejudice plaintiff. *Mays*, 837 F.2d at 1364.

in his decision.  *Id.* at 8.  According to plaintiff, the ALJ's failure to discuss these two impairments resulted in an RFC that allows her to do more work than she in fact can do.  *Id.*

Whether plaintiff has a severe impairment is the step two consideration in the five-step sequential analysis of a disability claim.  *Perez*, 415 F.3d at 461 (citing 20 C.F.R. § 404.1520). A severe impairment or combination of impairments limits significantly a claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1521(a).  The term severe is given a *de minimis* definition as found in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985).  According to *Stone*, "[a]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."  752 F.2d at 1101 (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)); *see also Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L. Ed. 2d 119 (1987).

If a severe impairment or combination of impairments is found at step two, the impairment or combined impact of the impairments will be considered throughout the disability determination process.  20 C.F.R. §§ 404.1520, 404.1523.  A determination that an impairment or combination of impairments is not severe will result in a social security determination that an individual is not disabled.  *Id.*

With regard to plaintiff's allegation that she suffered from the severe impairment of obesity, the record shows that she did not allege obesity as an illness, injury, or condition that limited her ability to work.  Transcript at 113.  Further, plaintiff does not cite any portion of the medical record in which a physician opined that her weight may have caused functional limitations.  Nor does plaintiff's testimony corroborate her delayed allegation that her obesity has caused her a severe impairment.  The ALJ specifically asked plaintiff what she felt kept her from

being able to work, but her response did not include obesity. *Id.* at 698. It is plaintiff's burden to demonstrate that she suffers from a severe impairment at step two of the sequential analysis. *Perez*, 415 F.3d at 461. As noted in *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995): "The ALJ's duty to investigate . . . does not extend to possible disabilities that are not alleged by the claimant or to those disabilities that are not clearly indicated on the record." Thus, substantial evidence supports the ALJ's conclusion that plaintiff does not suffer from the severe impairment of obesity. *Leggett*, 67 F.3d at 566.

Plaintiff claims that the ALJ also failed to consider her insomnia as a severe impairment. As with obesity, plaintiff did not allege in her application for disability benefits that her difficulties with sleeping amounted to an illness, injury, or condition that limited her ability to work. In making his determination of plaintiff's impairments, the ALJ considered a multitude of possible impairments and determined some of them to be severe, such as plaintiff's osteoarthrosis and disorders of the spine. The ALJ considered other impairments and found them not to be severe, such as plaintiff's restless leg syndrome and depression. Transcript at 15.

It is evident that the ALJ did not consider plaintiff's inability to sleep as a separate disability. The ALJ noted that plaintiff testified she has neck pain, problems sleeping, knee pain, high blood pressure, a hernia, and depression and that plaintiff "lays down during the day because of pain and a lack of sleep." *Id.* The ALJ noted:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

*Id.*

11

Moreover, plaintiff's treatment for difficulties sleeping began in March and April of 1998, yet plaintiff did not allege an onset of disability until March 28, 2003. *Id.* at 12, 187-189, 520-21. In fact, plaintiff worked for many years with the alleged disability. *Id.* at 122. An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. *Stone*, 752 F.2d at 1101. Plaintiff's ability to work despite her difficulties sleeping supports a finding that these difficulties were not a severe disabling impairment. *Vaughn v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995).

Plaintiff relies on the case *Loza v. Apfel*, 219 F.3d 378, 399 (5th Cir. 2000) for the contention that failure to discuss the interaction or cumulative effect of a plaintiff's impairments is error. *Loza* is inapplicable here, however, because substantial evidence does not support a finding that plaintiff's alleged difficulties with sleeping and obesity interfered with her ability to work, considered separately, or with her other alleged difficulties. Plaintiff has the burden of demonstrating her alleged disability. *Perez*, 415 F.3d at 461. The record taken as a whole does not support a finding that she has met that burden.

### CONCLUSION

For the foregoing reasons,

IT IS RECOMMENDED that the Commissioner's determination be AFFIRMED and that plaintiff's Complaint be DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10)**

**BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, on the 4th day of March, 2009.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE